UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**       **CRIMINAL NO. 6:24-CR-00203**

**VERSUS**      **JUDGE DAVID C. JOSEPH**

**TERRY REBERT, SR.**      **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS INDICTMENT (the "Motion") filed by Defendant Terry Rebert, Sr. ("Defendant") in the above-captioned matter. [Doc. 36]. Defendant moves to dismiss Count One of the Indictment charging him with Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The government filed an Opposition on June 13, 2025. [Docs. 44]. For the foregoing reasons, the Defendant's Motion is DENIED.

### BACKGROUND

On September 18, 2024, a federal grand jury returned an Indictment charging the Defendant with one count of 18 U.S.C. § 922(g)(1) for possession of an RG, Model RG23, .22 Cal; Revolver after being convicted of three separate state felony offenses. [Doc. 1]. The Defendant's prior felony convictions include: (i) Domestic Abuse Battery 3rd Offense (La. R.S. § 14:35.3); (ii) Second Degree Battery, that resulted in serious bodily injury (La. R.S. § 14:34.1); and Possession of Schedule II Controlled Substances (Cocaine) (La. R.S. § 40:967(A)(1)). [Doc. 44-1, pp. 10-11; Doc. 44-2, p. 2].

## LAW AND DISCUSSION

The Defendant's Motion asserts that § 922(g)(1) violates the Second Amendment as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022), as clarified by *United States v. Rahimi,* 144 S. Ct. 1889, 219 L.Ed.2d 351 (2024).[1] Defendant also points the Court to the recent Fifth Circuit case of *United States v. Diaz,* 116 F.4th 458 (5th Cir. 2024), which describes the proper framework under which district courts are to consider "as-applied" challenges to charges brought under 18 U.S.C. § 922(g)(1).

In opposition, the government contends that the nature of the Defendant's prior convictions defeat his as-applied challenge under applicable law. [Doc. 44]. For Defendant's Domestic Abuse Battery and Second Degree Battery convictions, the government relies on *Rahimi,* 144 S. Ct. 1889 and *Diaz,* 116 F.4th 458. [Doc. 44, pp. 12-16]. Specifically, the government avers that historical precedent supports disarming the Defendant because he is dangerous and presents a threat of violence to the public. *Id.* Relevant to the Defendant's prior felony drug conviction, the government argues that disarming drug dealers comports with our nation's history

---

[1] Defendant acknowledges that a facial challenge to § 922(g)(1) is foreclosed by existing precedent in the Fifth Circuit but raises the issue to preserve the issue for further review. [Doc. 36-1, p. 6]. *See United States v. Betancourt,* 2025 WL 1571854 (5th Cir. June 4, 2025) ("Defendant's facial Second Amendment challenge to [§ 922(g)(1)] prohibiting possession in interstate commerce of firearms or ammunition by any person who had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year was foreclosed by prior caselaw in the circuit denying a facial Second Amendment challenge to the same statute."). Accordingly, the Court shall only consider Defendant's as-applied challenge to § 922(g)(1).

and tradition of firearm restrictions, pointing the Court to founding era laws punishing the trafficking of contraband. *Id*. at p. 19. The government further contends that federal courts widely acknowledge the link between drugs and violence, and that the founders would have sought to mitigate this risk. *Id*. at pp. 16-19.

## I. *Legal Standard*

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" *United States v. Wilson,* 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024), *citing* Fed. R. Crim. P. 12(b)(3)(B)(v). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## II. *Governing Second Amendment Law*

In *Bruen*, the United States Supreme Court set forth a two-step framework for Second Amendment constitutional challenges. *Bruen*, 597 U.S. at 24. First, "*Bruen* requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." *Wilson*, 2024 WL 4436637, at *4, *citing Bruen*, 597 U.S. at 24. Second, "the burden … shifts to the government to demonstrate that regulating [the Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.*, *citing Bruen*, 597 U.S. at 24. "To satisfy this burden, the

government must 'identify a well-established and representative historical analogue, not a historical twin.'" *Diaz*, 116 F.4th at 467, *citing Bruen*, 597 U.S. at 30. In determining if regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.

### III. *Section 922(g)(1) is Constitutional as Applied to the Defendant*

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear in *Diaz* that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment.[2] Therefore, the Court will only undertake the second step of the *Bruen* analysis.

In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. *See Bruen*, 597 U.S. at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* Court relied on three categories of historical analogues: (i) historical laws that authorized capital punishment and estate forfeiture as consequences of theft convictions,[3] (ii) two proposals from state constitutional

---

[2]   "The government also raises the familiar argument that *Diaz* is not among 'the people' protected by the Second Amendment.  We disagree.  … Diaz's status as a felon is relevant to our analysis, but it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Diaz*, 116 F.4th 458, 466-67 (5th Cir. 2024), *citing Bruen*, 597 U.S. at 24.

[3]   The Court notes that while the category of what was considered a felony at the time of our Nation's birth was "a good deal narrower," the government finds further support in the additional historical analogues discussed in *Diaz* which "more specifically target the

conventions that excluded those deemed dangerous from the right to bear arms,[4] and (iii) the colonial-era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment." *Id.* at 467, 468, 470. Importantly, in all three categories of analogues discussed in *Diaz*, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

Applying this precedent to the instant case, the historical analogues discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals viewed to be violent or a threat to public safety.[5] These analogues demonstrate a longstanding "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902.

---

[Defendant's] circumstances" as a violent offender. *Diaz*, 116 F.4th at 468, *citing Lange v. California*, 594 U.S. 295, 311, 141 S. Ct. 2011, 210 L.Ed.2d 486 (2021).

[4]  "The Pennsylvania address suggested that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.' … Massachusetts's proposed amendment said that the Constitution authorized 'the people of the United States, who are peaceable citizens, [to keep] their own arms.'" *Diaz*, 116 F.4th at 470, *citing* BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665, 681 (1971).

[5]  The *Diaz* court explained that historical laws authorizing capital punishment and estate forfeiture as consequences of felonies were "justified by the need to adequately punish felons, deter reoffending, and *protect society from those proven untrustworthy to follow the law*." *Diaz*, 116 F.4th at 469 (emphasis added). Similarly, the *Diaz* court found that the proposals from state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* Lastly, the *Diaz* court discussed the Supreme Court's finding in *Rahimi* that "going armed" laws punished "those who had menaced others with firearms" because such actions "disrupted the 'public order' and 'le[d] almost necessarily to actual violence.'" *Id.* at 470, *citing Rahimi*, 144 S. Ct. at 1900-01.

Here, at least two of Defendant's underlying predicate crimes – Domestic Abuse Battery and Second Degree Battery – establish the requisite nexus to public safety.[6] In Louisiana, the felony offense of Domestic Abuse Battery is defined as the "intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." La. R.S. § 14:35.3(A). Likewise, Second Degree Battery is described as "a battery when the offender intentionally inflicts serious bodily injury." La. R.S. § 14:34.1(A). Thus, in Louisiana, both Domestic Abuse Battery and Second Degree Battery involve the intentional use of force against another person. This clearly places Defendant into the category of those who "present a credible threat to the physical safety of others."[7] *Rahimi,* 144 S. Ct. at 1902. Like in *Diaz*, the purpose behind the enforcement of § 922(g)(1) against this Defendant is "relevantly similar to that of the [historical analogues]: to deter violence and lawlessness."[8] *Diaz,* 116 F.4th at 469.

---

[6] The Court highlights that Defendant appears to have been initially charged with Second Degree Murder for this incident, [Doc. 44-1, p. 8], but pled to a lesser crime, [Doc. 44-2, p. 2].

[7] Relevant to the Defendant's Domestic Abuse Battery conviction, the *Rahimi* court pointedly held that a "[f]ederal statute prohibiting an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he represents a credible threat to the physical safety of an intimate partner, or a child of the partner or individual, is facially constitutional under the Second Amendment." *Rahimi,* 144 S. Ct. 1889.

[8] "The precursor to § 922(g)(1) [...] was enacted to 'bar possession of a firearm from persons whose prior behaviors have established their violent tendencies.'" *Diaz,* 116 F.4th at 469, *citing* 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana).

This conclusion is further reinforced by the Fifth Circuit's recent applications of the post-*Diaz* framework to defendants with underlying predicate offenses similar to those of Defendant. *See United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025) (finding that § 922(g)(1) was constitutional as applied to a defendant previously convicted of aggravated battery because the "[n]ation had longstanding tradition of disarming persons with a violent criminal history analogous to the defendant's previous conviction, and defendant's prior conviction for aggravated battery causing great bodily injury constituted [a] dangerous and violent crime."); *United States v. Betancourt*, 2025 WL 1571854 (5th Cir. June 4, 2025) (same for a conviction of aggravated assault because convictions "indicated that defendant posed a threat to public safety, and thus felon-in-possession statute did not violate the Second Amendment as applied to defendant."). And the Court notes for good measure that courts across the country have held § 922(g)(1) constitutional as applied to defendants with the same or similar predicate convictions as Defendant.[9] Therefore, the Court finds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against the Defendant in the instant Indictment.

Because the Court finds that the Defendant's predicate felony convictions of Domestic Abuse Battery and Second Degree Battery are sufficient to support Count

---

[9] *See United States v. Vano*, 2024 WL 4202386, at *10 (D. Kan. Sept. 16, 2024) (finding that § 922(g)(1) was constitutional as applied to a defendant previously convicted of Aggravated Battery, Aggravated Assault, and Aggravated Domestic Battery). *See also United States v. Leslie*, 2024 WL 1718062, at *6 (E.D. Pa. Apr. 22, 2024) (same for predicate conviction of Aggravated Assault). *See also United States v. Polk*, 2024 WL 4216039 (S.D. Ind. Sept. 17, 2024) (same for predicate convictions of Dealing Cocaine, Robbery and/or Confinement and/or Theft, and Battery).

One of the Indictment under the *Bruen* analysis, the Court need not examine the remainder of the Defendant's criminal history to deny the Motion.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that Defendant's MOTION TO DISMISS INDICTMENT [Doc. 36] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 17th day of June 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE